# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3817

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Nebraska. |
| Terry L. Harlan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 11, 2004

Filed:  May 14, 2004

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted Terry L. Harlan of assault with a dangerous weapon and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 1153 and § 113(a), respectively, for beating his girlfriend Delilah Freemont with a board in their home on the Omaha Indian Reservation.  Concluding the Sentencing Guidelines understated Mr. Harlan's criminal history and inadequately considered the severity of Ms. Freemont's physical and psychological injury, the district court[1] departed

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

upward from Criminal History Category I to III. On appeal, Mr. Harlan argues the evidence was insufficient to support the conviction and the district court erred in imposing the upward departure. We affirm.

I

On October 5, 2002, Mr. Harlan and Ms. Freemont lived at Unit 26 on the Omaha Indian Reservation in Macy, Nebraska.[2] Both were enrolled members of the Omaha Tribe.

The couple spent part of the afternoon at home drinking beer and watching college football with Ms. Freemont's siblings, Lizzie Avila and Myron Freemont. Some time after 3:00 p.m., Ms. Avila and Mr. Freemont left to obtain more beer, and they returned to Unit 26 between 7:00 and 8:00 p.m. to find Ms. Freemont unconscious on the floor drenched in her own blood. Other than Mr. Harlan, no other person was in the residence.

At trial, Ms. Freemont testified she and Mr. Harlan started arguing after her siblings departed and Mr. Harlan started beating her with a board when she attempted to leave. She recalled the board repeatedly struck her head, face, knees, arms, and back before she lost consciousness.

When Ms. Freemont's siblings returned to Unit 26, they knocked on the door and heard the television playing inside, but no one responded. After Mr. Freemont looked through the kitchen window and threatened to kick in the door, Mr. Harlan finally opened the door. Upon seeing Ms. Freemont lying unconscious in her own blood on the livingroom floor, Mr. Freemont left to seek help at the tribal police

---

[2]The couple had an infant daughter, but the record does not reflect whether the child lived with her parents in Unit 26.

department located one block away and Ms. Avila attended to Ms. Freemont. Mr. Harlan then explained Ms. Freemont had gone next door and then returned home with the injuries. He then changed his account, stating he woke up to find his cousins beating Ms. Freemont.

Meanwhile, Mr. Freemont returned with Omaha Tribal Police Officer Bertucci, who had already called for an ambulance. Officer Bertucci observed Ms. Freemont's blood loss and attenuated pulse and called for an ambulance a second time. After escorting the ambulance to the hospital, Officer Bertucci returned to Unit 26 and there discovered a board smeared with a red substance appearing to be blood. At the tribal jail, Officer Bertucci observed specks of a like substance splattered on Mr. Harlan's face. In the morning, Ms. Freemont provided Officer Bertucci with an oral and written statement alleging Mr. Harlan had beaten her with a board.

Ms. Freemont was life-flighted from the Winnebago Public Health Service Hospital to the Mercy Medical Center, a level-two trauma center in Sioux City, Iowa. Emergency room doctor Scott Murray observed Ms. Freemont suffered fractures to her nasal bone, left orbital rim, and left ulnar bone. Dr. Murray described the latter as a nightstick-type fracture, meaning the arm had been struck while Ms. Freemont was in a defensive stance. Ms. Freemont's eyes were swollen shut, and she had more than thirty-five centimeters of deep lacerations just on her scalp. Otolaryngologist David Wagner observed a "degloving" injury consisting of parallel lacerations which had lifted a swatch of scalp from Ms. Freemont's head. These scalp lacerations required more than 120 staples to close. Both Dr. Murray and Dr. Wagner opined Ms. Freemont's injuries caused extreme physical pain and presented a protracted and obvious disfigurement. They also agreed the injuries were consistent with the use of a board as the weapon.

The instant offense is not the first time Mr. Harlan has run afoul of the law. In 1980, a federal court convicted him of voluntary manslaughter for killing a man with

a knife.  Starting in October 1997, Harlan accrued at least four tribal convictions, two for disorderly conduct and at least two for assaults on Ms. Freemont.[3]

The Presentence Report (PSR) assessed Criminal History Category I and a base offense level of 15.  Pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2A2.2(b)(2)(B), the district court applied a four-level enhancement for use of a dangerous weapon, and pursuant to U.S.S.G. § 2A2.2(b)(3)(E), the court assessed a five-level enhancement for permanent bodily injury to the victim.  Thus, the court determined the applicable offense level was 24.  Mr. Harlan neither objected to nor now appeals these assessments.

The government moved for an upward departure on the grounds the Guidelines understated Mr. Harlan's criminal history and the offense culminated from a series of brutal assaults Mr. Harlan had perpetrated upon Ms. Freemont.  The court departed upward to Category III, found the post-departure Guidelines range to be 63 to 78 months, and sentenced Mr. Harlan to 72 months of imprisonment.[4]  On appeal, Mr. Harlan challenges the upward departure and argues the evidence was insufficient to support his conviction.

II

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to verdict, resolving evidentiary conflicts in favor of the government,

---

[3]Mr. Harlan's appellate brief states there were three tribal convictions for assault against Ms. Freemont prior to the instant offense; the government's brief states there were only two such convictions.

[4]Without the departure, the applicable Guidelines range under Category I would have been 51 to 63 months.  Thus, Mr. Harlan's 72-month sentence exceeded the maximum Category-I sentence by 9 months.

and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003). Put simply, we affirm if a reasonable juror could have found the defendant guilty beyond a reasonable doubt. See United States v. Harmon, 194 F.3d 890, 892 (8th Cir. 1999).

Sufficient evidence supports the jury's verdict in this case. First, Ms. Freemont identified Mr. Harlan as the assailant and gave detailed testimony of the assault. See United States v. L.B.G., 131 F.3d 1276, 1278 (8th Cir. 1997) (stating the uncorroborated testimony of a single witness may suffice to sustain a conviction). Mr. Harlan argues Ms. Freemont was inebriated at the time of the assault and so may have misidentified Mr. Harlan as the attacker. Because "it is the sole province of the jury to weigh the credibility of a witness," United States v. Enriquez, 201 F.3d 1072, 1074 (8th Cir. 2000), we reject this argument. Ms. Freemont well knew Mr. Harlan, and her testimony was consistent with both the medical evidence and the statement she gave the day after the attack. These facts were sufficient to permit a reasonable juror to rely on Ms. Freemont's identification and testimony.

The circumstantial and physical evidence also supports the verdict. When Ms. Avila and Mr. Freemont returned to Unit 26, as when they left, only two people were within – the victim and the accused. Ms. Avila and Mr. Freemont knocked on the door repeatedly and Mr. Freemont threatened to kick in the door before Mr. Harlan responded. Mr. Harlan then gave Ms. Avila contradictory explanations for Ms. Freemont's injuries, stating first Ms. Freemont had come home bleeding and then explaining his cousins had attacked her while he slept. From such evidence, a juror could reasonably infer guilt. The physical evidence confirmed the inference. Officer Bertucci observed Mr. Harlan's face was speckled with a substance appearing to be blood, and the officer found a board smeared with a like substance in the washroom of Unit 26. In sum, the evidence in the record is more than sufficient to support the conviction.

Mr. Harlan next argues the district court erroneously relied on impermissible factors in assessing the upward departure. Prior to the enactment of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act, Pub. L. No. 108-21, 117 Stat. 650 (2003), we would have reviewed the district court's departure under a unitary abuse-of-discretion standard. Now, we review *de novo* whether the district court based the departure on a permissible factor, and we review for abuse of discretion the reasonableness of a permissible departure. United States v. Flores, 336 F.3d 760, 763 (8th Cir. 2003).[5]

The district court appears to have based the departure on four factors: (1) Mr. Harlan's prior convictions in tribal court, (2) Mr. Harlan's voluntary manslaughter conviction in federal court, (3) the severity of the physical injuries, and (4) the alleged extreme psychological harm. Mr. Harlan challenges the permissibility of all but the first of these factors.

A sentencing court may depart upward on the basis of "prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses)." U.S.S.G. § 4A1.3(a)(2)(A). In departing upward on such basis, "the court shall determine the extent of a departure . . . by using, as a reference, the criminal history category applicable to a defendant whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). In other words, the sentencing court should be guided, at least in part, by the criminal history category which would have applied had the uncounted prior convictions been computed.

---

[5]The sentencing court's findings of fact are reviewed for clear error. Flores, 336 F.3d at 763.

Had Mr. Harlan's tribal convictions been taken into account in his criminal history score, his two assault convictions would have added at least one point each to the score, depending on the length of the corresponding sentences.[6] See U.S.S.G. § 4A1.1. Similarly, his manslaughter conviction would have added three points to his score because the conviction resulted in a prison sentence exceeding one year and one month. Id. In all, the prior convictions would have added at least five points to Mr. Harlan's criminal history score, and these points would have required a sentence under Category III. See U.S.S.G. § 5A, Sentencing Table (mandating a Category III sentence for defendants with 4, 5, or 6 criminal history points). In applying Category III in this case, therefore, the district court appears to have used as a reference the category applicable to a defendant whose criminal history or likelihood to recidivate most closely resembled Mr. Harlan's.

Mr. Harlan argues the district court improperly took into account his federal manslaughter conviction. A prior conviction serves as the basis for an upward departure if the defendant was convicted of the past offense, or was still serving time for the past offense, within the fifteen-year period immediately preceding the instant offense. See U.S.S.G. § 4A1.2(e)(1). Because he was released from prison for the manslaughter conviction approximately fifteen years and one month before his assault upon Ms. Freemont, he argues the conviction constitutes an impermissible factor.

The Sentencing Guidelines, however, contain an exception to the applicable period:

> If the court finds that a sentence imposed outside [the fifteen-year] period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 (Adequacy of Criminal History Category).

---

[6]U.S.S.G. § 4A1.2(c) would have excluded the disorderly-conduct convictions.

U.S.S.G. § 4A1.2, cmt. n.8.  Mr. Harlan's manslaughter conviction evidences criminal conduct similar to aggravated assault.  Moreover, manslaughter constitutes serious criminal conduct and so again falls under the exception to § 4A1.2.  As the district court explained:

> The fact [Mr. Harlan] has a prior manslaughter conviction that is a month out, I think, needs to be taken into account, although I don't agree with the government that the full weight of the conviction needs to be taken into account because it has been so long since the manslaughter conviction. . . .

Sentencing Transcript at 177-79.  In our view, the district court properly decided to apply the exception and consider the manslaughter conviction.  Lest the exception consume the rule, we think the decision to apply the exception requires balancing the severity of the past conviction with length of the temporal extension.  Here, the court dealt with a *homicide* which fell outside the fifteen-year period by merely *a month*.  While surely the exception is not without limit,[7] we conclude the manslaughter conviction, as well as the tribal convictions, was a permissible basis for the departure.

Finally, Mr. Harlan contends Ms. Freemont's physical and psychological injuries were impermissible factors.  He points out the five-level enhancement already took these factors into account and so the court engaged in impermissible double counting.  Because his criminal record represents an independently adequate basis for the departure, however, we need not reach the other factors the district court may have considered.  See United States v. Long Turkey, 342 F.3d 856, 859 n.2 (8th Cir. 2003).

---

[7]As an obvious example, we doubt a sentencing court could properly rely on a minor similar offense occurring many years outside the applicable period in imposing an upward departure.

We now review for abuse of discretion the reasonableness of the upward departure based on Mr. Harlan's prior convictions. As explained, the district court would have sentenced him under Criminal History Category III, had the Guidelines accounted for his prior convictions, and by departing upward to Category III, the district court imposed a sentence only 9 months longer than that authorized without any departure under Category I. Under these circumstances, the district court acted well within its sound discretion when it decided to impose the departure.

## IV

For the reasons we have discussed above, we affirm both the judgment of conviction and the upward departure.

_____